**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RYAN O'DELL,<br><br>Plaintiff,<br><br>v.<br><br>COVETRUS, INC., PHILIP A. LASKAWY, DEBORAH G. ELLINGER, PAUL R. FONTEYNE, SANDRA L. HELTON, MARK J. MANOFF, EDWARD M. MCNAMARA, STEVEN PALADINO, SANDRA E. PETERSON, RAVI SACHDEV, SHARON WIENBAR, and BENJAMIN WOLIN,<br><br>Defendants. | Civil Action No. 22-cv-5803<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Covetrus, Inc. ("Covetrus" or the "Company") and the members of Covetrus' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Covetrus by affiliates of Clayton, Dubilier & Rice, LLC and TPG Global, LLC ("the Buyout Group").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 30, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Corgi Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Corgi Bidco, Inc. ("Parent"), will merge with and into Covetrus with Covetrus surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 24, 2022 (the "Merger Agreement"), each Covetrus stockholder will receive $21.00 in cash (the "Merger Consideration") for each Covetrus share owned.

3. As discussed below, Defendants have asked Covetrus' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Covetrus' stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of shares of Covetrus stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Philip A. Laskawy has served as a member of the Board since 2019 and is the Chairman of the Board.

11. Individual Defendant Deborah G. Ellinger has served as a member of the Board since 2019.

12. Individual Defendant Paul R. Fonteyne has served as a member of the Board since 2021.

13. Individual Defendant Sandra L. Helton has served as a member of the Board since 2019.

14. Individual Defendant Mark J. Manoff has served as a member of the Board since 2019.

15. Individual Defendant Edward M. McNamara has served as a member of the Board since 2019.

16. Individual Defendant Steven Paladino has served as a member of the Board since 2019.

17. Individual Defendant Sandra E. Peterson has served as a member of the Board since 2020 and is a Partner at Clayton, Dubilier & Rice, LLC ("CD&R").

18. Individual Defendant Ravi Sachdev has served as a member of the Board since 2019 and is a Partner at CD&R.

19. Individual Defendant Sharon Wienbar has served as a member of the Board since 2020.

20. Individual Defendant Benjamin Wolin has served as a member of the Board since 2019 and is the Company's President and Chief Executive Officer.

21. Defendant Covetrus is a Delaware corporation and maintains its principal offices at 7 Custom House Street, Portland, Maine 04101. The Company's stock trades on the NASDAQ Global Market under the symbol "CVET."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

24. Covetrus, together with its subsidiaries, operates as an animal-health technology and services company. It engages in the sale of animal-health consumable products, including proprietary and Covetrus branded products, small equipment, laboratory products, large equipment, equipment repair services, branded and generic pharmaceuticals, vaccines, surgical products, diagnostic tests, infection-control products, parasiticides, and vitamins and supplements to wholesale and retail customers. The Company also offers value-added solutions, such as inventory management and e-commerce, as well as continuing education services for practitioners. In addition, it provides practice management software, data-driven applications, client communications tools, and related services to increase staff efficiency and enhance business health; and solutions that integrate with its software platforms, including client communication services, reminders, data backup services, hardware sales and support, and credit card processing services for veterinary practitioners and animal-health clinics. Further, the Company engages in the distribution of finished goods pharmacy and specialty pharmaceutical compounding products, as well as offers shipping, manufacturer incentives, service fees, and data integration and support services. It serves animal-health and veterinary practices, and clinics in the companion-animal, equine, and large-animal markets primarily in North America, Europe, and the Asia-Pacific. The company was formerly known as HS Spinco, Inc. Covetrus was incorporated in 2018 and is headquartered in Portland, Maine.

25. On May 25, 2022, the Company and the Buyout Group jointly announced the Proposed Transaction:

> PORTLAND, Maine--(BUSINESS WIRE)--Covetrus® (NASDAQ: CVET) ("Covetrus" or the "Company"), a global leader in animal-health technology and services, today announced that it

has entered into a definitive agreement pursuant to which funds affiliated with Clayton, Dubilier & Rice ("CD&R"), a global private investment firm, and TPG Capital, the private equity platform of global alternative asset management firm TPG ("TPG"), will acquire all outstanding shares of Covetrus common stock not already owned by affiliates of CD&R for $21.00 per share in cash, representing an enterprise value of approximately $4 billion.

CD&R and its affiliates currently beneficially own approximately 24% of the Company's outstanding shares of common stock. The transaction delivers significant value to Covetrus' shareholders and represents a 39% premium to Covetrus' 30-day volume weighted average price per share as of the unaffected stock price as of May 13, 2022.

The proposed transaction has been unanimously approved by a transaction committee of independent directors of the Board of Directors of Covetrus (the "Transaction Committee"). The Board of Directors of Covetrus has unanimously approved the proposed transaction on the recommendation of the Transaction Committee.

"This transaction is an important milestone for our company, shareholders, employees, customers and partners," said Benjamin Wolin, Covetrus' President and Chief Executive Officer and a member of its Board of Directors. "Not only does this deal provide compelling value for our existing shareholders, it allows Covetrus to continue its mission to drive positive outcomes – both business and healthcare – for veterinarians across the globe. We appreciate CD&R's support and their continued commitment to our company and the global veterinary community."

"Covetrus has undergone a true transformation since our initial 2015 investment in its predecessor Vets First Choice, growing from $55 million in revenue focused primarily on online pharmacy in the US to a leading global provider of animal health services with more than $4.6 billion in revenue," said Sarah Kim, Partner at CD&R. "We are excited to have this opportunity to grow our investment in Covetrus and to do so in partnership with TPG and management," added Ravi Sachdev, Partner at CD&R.

"Covetrus offers a dynamic portfolio of leading distribution and technology solutions to veterinarians across the globe," said Jeff Rhodes, Co-Managing Partner at TPG Capital. "The company is at an important stage in its ongoing evolution, and we look forward to partnering with management and CD&R to further its leadership in

> the growing animal health space," continued Kendall Garrison, Partner at TPG Capital.
>
> The transaction is expected to close in the second half of 2022. Completion of the transaction is subject to certain regulatory approvals and the satisfaction of other customary closing conditions, including the approval of Covetrus' shareholders. The transaction will be financed through a combination of cash funded by investment funds affiliated with CD&R and TPG Capital, as well as committed debt financing.
>
> Upon completion of the transaction, Covetrus will become a private company and will no longer be publicly listed or traded on NASDAQ. Covetrus' management team, including Benjamin Wolin, President and Chief Executive Officer, is expected to continue to lead the Company. Covetrus plans to maintain its headquarters in Portland, Maine, and will continue to operate under its current brands.
>
> **Advisors**
>
> Goldman Sachs & Co. LLC is serving as lead financial advisor to Covetrus. Lincoln International LLC is also serving as financial advisor to Covetrus. Weil, Gotshal & Manges LLP is serving as legal counsel.
>
> Deutsche Bank Securities Inc., UBS Investment Bank, BMO Capital Markets and Mizuho Securities USA LLC have provided committed debt financing for the transaction and are serving as financial advisors to CD&R and TPG Capital. Debevoise & Plimpton and Ropes & Gray are acting as legal counsel for CD&R and TPG Capital.

* * *

26. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Covetrus' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B. <u>The Materially Incomplete and Misleading Proxy Statement</u>**

27. On June 30, 2022, Covetrus filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*<u>Omissions and/or Material Misrepresentations Concerning Financial Projections</u>*

28. The Proxy Statement fails to provide material information concerning financial projections by Covetrus management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Covetrus management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Covetrus; (ii) the inputs and assumptions underlying the implied exit terminal year EV/EBITDA multiples ranging from 6.5x to 10.7x; (iii) the inputs and assumptions underlying the use of perpetuity growth rate range of 2.5% to 3.5%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 9.0% to 11.5%; (v) the Company's weighted average cost of capital; and (vi) the number of fully diluted shares of Company common stock outstanding as of May 20, 2022.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the NTM/EV/EBITDA range of 10.0x to 13.0x; (ii) the historical NTM EV/EBITDA multiples for the shares of Company common stock during the period beginning January 1, 2022 and ending May 19, 2022 for the Company and certain selected distribution companies listed under the heading *Selected Public Company Comparables*; (iii) the Company's projected net debt as of December 31, 2022, 2023, and 2024; (iv) the estimated fully-diluted shares of Company common stock outstanding as of December 31, 2022, 2023, and 2024; and (v) the inputs and assumptions underlying the discount rate of 11.7%.

35. With respect to Goldman Sachs' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

36. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions selected and the premia paid for those transactions.

37. With respect to Goldman Sachs' *Selected Public Company Comparables* analysis, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>COUNT II</u>**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of Covetrus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Covetrus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Covetrus, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Covetrus, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 7, 2022

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: s/ Benjamin Y. Kaufman
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*

812936